IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RENNIE WEST; JRW OAHU ONE, INC., )<br>          )<br>     Plaintiffs, )<br>          )<br>  v.       )<br>          )<br>INTERNATIONAL HOUSE OF PANCAKES, )<br>LLC,        )<br>          )<br>     Defendant. )<br>_____ ) | Civ. No. 09-00542 ACK-KSC |

**ORDER AFFIRMING IN PART AND REVERSING IN PART THE MAGISTRATE
JUDGE'S ORDER DATED MARCH 15, 2011**

**FACTUAL BACKGROUND**[1]

      In this diversity action, Rennie West and JRW Oahu One,
Inc., claim that International House of Pancakes, LLC, ("IHOP")
wrongfully terminated the parties' franchise agreement for the
development of an IHOP restaurant at the Windward Mall in
Kaneohe, Hawaiʻi (the "Windward Mall IHOP"). Plaintiffs'
complaint, which was filed on September 23, 2009 and removed to
this Court on November 12, 2009, asserts the following claims
against IHOP: (1) breach of Hawaii's Franchise Investment Law,
H.R.S. Ch. 482E, (2) tortious breach of contract, (3)
misrepresentation, (4) unfair competition in violation of H.R.S.

_____

     [1] The facts as recited in this Order are for the purpose of
disposing of the instant appeal, and are not to be construed as
findings of fact that the parties may rely on in future
proceedings in this case.

§§ 480-2 and 480-13, and (5) punitive damages.  Before the Court
is Plaintiffs' appeal of a protective order issued by the
magistrate judge on March 15, 2011.

In November 2004, Plaintiffs entered into a Single
Store Development Agreement (the "SSDA") with IHOP, providing
Plaintiffs the exclusive right to develop the Windward Mall IHOP.
This was to be West's third IHOP franchise.  JRW entered into a
lease with Kamehama Schools, the landlord of the Windward Mall,
in February 2005.  In June 2005, Plaintiffs and IHOP entered into
a franchise agreement.  The franchise agreement originally
required the Windward Mall IHOP to open by October 31, 2005,
although the parties later agreed to extend the opening deadline
to December 31, 2005.

In September 2005, West told IHOP's Director of
Franchise and Development, Jess Sotomayor, that as a result of
delays with the Honolulu Department of Planning and Permitting,
it was unlikely that Plaintiffs could even obtain a building
permit and begin construction by the December 31, 2005, opening
deadline.  Sotomayor informed West, and confirmed by letter, that
West could obtain a further extension of the opening deadline to
March 31, 2006, provided that she pay a Delayed Development Fee
("DDF") for each day past the December 31 deadline.  West
contends that she told Sotomayor that she did not know how to
calculate the fee because she did not know when she would be able

to open the restaurant. According to West, Sotomayor told her to advise him when she began construction and that IHOP would work with her, but he did not mention that West had to pay the DDF prior to December 31, 2005. Sotomayor sent West a second letter in November 2005 reiterating that West could obtain an extension provided that she pay the DDF.

Plaintiffs claim that based on West's communications with Sotomayor and IHOP's Vice President of Franchise Development, Rick Celio, West concluded that she did not have to pay the DDF until she obtained a permit and knew when construction would commence. IHOP points out that Sotomayor's letters referenced Section 3.2 of the SSDA, which, along with Section 4.02(d) of the franchise agreement, explicitly provided that a DDF in the amount of $350.00 per day for each day the deadline was extended had to be paid in advance. IHOP also notes that West has admitted that she did not review either of these agreements after receiving Sotomayor's September 2005 letter.

In any event, Plaintiffs did not pay the DDF prior to the December 31, 2005 opening deadline, and IHOP terminated the Plaintiffs' franchise agreement on January 4, 2006. Allegedly, IHOP then advised Plaintiffs that if they wanted to be reconsidered for development of the Windward Mall IHOP, they had to file a new franchise application and pay a $15,000 franchise fee. Further, IHOP allegedly told Plaintiffs that this would

afford them more time to construct the store than the March 31, 2006, extension. Apparently, it would also save Plaintiffs the cost of the DDF. Nevertheless, on January 24, 2006, Plaintiffs attempted to pay IHOP $31,500 for the DDF. IHOP did not accept the tender. At some point in January 2006 Plaintiffs also reapplied for a franchise with IHOP and paid the $15,000 fee. IHOP did not approve the application.

Having defaulted on their lease with Kamehama Schools, Plaintiffs assigned their Windward Mall lease on December 4, 2006, to VSE Kaneohe, LLC, an entity controlled by Vince and Sarah Espino. At the time, Union Mak Corporation, another entity controlled by the Espinos, already had a Multi-Store Development Agreement for Hawai'i with IHOP. IHOP and Union Mak had executed the multi-store agreement on August 5, 2005, and it specifically excluded the Windward Mall IHOP. On January 26, 2007, IHOP entered into a franchise agreement with VSE Kaneohe to develop, own, and operate the Windward Mall IHOP. This franchise agreement required the Windward Mall IHOP to open by April 30, 2008. The restaurant ultimately opened in April 2007.

According to Plaintiffs, the Espinos used Plaintiffs' permit application (without Plaintiffs' approval) and plans virtually unchanged to construct the Windward Mall IHOP. Plaintiffs also present evidence that Celio discussed development opportunities with the Espinos even before the Plaintiffs'

4

franchise agreement was terminated. During those discussions, the Espinos apparently expressed interest in developing the Windward Mall IHOP. Finally, Plaintiffs' complaint alleges that "while the [Espinos] faced similar difficulties in obtaining a building permit, they were shown [courtesies] not extended to Plaintiffs by the grant of extensions for the opening of [the Windward Mall IHOP]." Compl. ¶ 18.f.[2/] Plaintiffs also claim that they were required to comply with all applicable permitting laws; while the Espinos were allowed to violate the law by beginning construction on the Windward Mall IHOP before a permit had been issued.

## PROCEDURAL BACKGROUND

Plaintiffs' complaint was removed to this Court in November 2009 and Plaintiffs began conducting discovery around April 2010. In October 2010, Plaintiffs served IHOP with a Rule 30(b)(6) deposition notice seeking, <u>inter alia</u>, testimony regarding IHOP's granting of the Windward Mall IHOP franchise to the Espinos. IHOP objected and the parties ultimately submitted letter briefs to the Court. In December 2010, the magistrate

---

[2/] The Court is puzzled by the complaint's allegation that the Espinos were granted extensions for the opening of the Windward Mall IHOP, whereas Plaintiffs were not shown such courtesies. IHOP entered into a franchise agreement with VSE Kaneohe on January 26, 2007. Apparently, although VSE Kaneohe's required opening deadline was April 30, 2008, it opened the Windward Mall IHOP in April 2007 - within three months of signing its franchise agreement.

judge ruled "[t]hat the discovery disputes should be fully briefed and presented by way of properly supported motions and opposing memoranda," but "suggested that Plaintiffs consider first obtaining information and documents from the successor franchisee at the Windward Mall location, pursuant to Rule 45 of the Federal Rules of Civil Procedure." Doc. No. 52. According to Plaintiffs, the Espinos agreed that IHOP could produce the requested documents if Plaintiffs and IHOP signed a stipulated protective order, which they did. See Doc. No. 133 (stipulated protective order).

Notwithstanding the magistrate judge's suggestion that Plaintiffs seek discovery from the successor franchisee, Plaintiffs apparently continued to pursue discovery directly from IHOP. The parties arranged for IHOP's 30(b)(6) deposition to take place on February 16, 2011. The parties still disagreed about the scope of IHOP's testimony and document production, however, and on February 11, 2011, IHOP moved for a protective order with regard to Plaintiffs' fourth amended Rule 30(b)(6) deposition notice. See Doc. Nos. 79 (motion), 83 (Plaintiffs' opposition), 93 (IHOP's reply); see also Doc. No. 79, Ex. 9 ("Deposition Notice"). IHOP's motion sought to bar questioning and requests for documents regarding IHOP's dealings with the Espinos and their corporate entities. On March 15, 2011, following oral argument, the magistrate judge granted in part and

denied in part IHOP's motion.  Doc. No. 106 ("3/15/11 Order").

In particular, the magistrate judge found that "the request for

testimony and documents regarding the granting of the Windward

Mall franchise to the successor franchisee . . . [is] overbroad

and the information sought is irrelevant."  3/15/11 Order at 15.

Accordingly, he granted a protective order covering this request

(and other categories of discovery not on appeal).

On March 29, 2011, Plaintiffs moved for reconsideration

of the 3/15/11 Order based on "newly discovered evidence."  <u>See</u>

Doc. Nos. 125 (motion), 135, (IHOP's opposition), 143

(Plaintiffs' reply).  The magistrate judge denied this motion on

April 29, 2011.  Doc. No. 146.  He reasoned as follows:

> Plaintiffs, though clearly in disagreement with the
> Court's ruling, have not demonstrated any reason to
> reconsider said ruling.  What is more, they have not
> set forth facts or law of a strongly convincing nature
> to induce the Court to reverse its prior decision.
> Most, if not all, of the evidence attached to the
> Motion should have and could have been presented in
> connection with the motion for protective order. For
> this reason alone, the Motion should be denied.  Even
> if the Court had considered all of the attached
> evidence at the time it issued its Order, the ruling
> would be the same – that a protective order is
> appropriate with respect to the request for testimony
> and documents regarding the granting of the Windward
> Mall franchise to the successor franchisee because
> these requests are overbroad and the information sought
> is irrelevant.  Based on the evidence then and
> currently presented, the Court did not err in so
> ruling.

<u>Id.</u> at 18.

On May 3, 2011, IHOP moved for a protective order to prevent the production of documents and limit the questioning of the Espinos, whose deposition had since been noticed. See Doc. Nos. 150 (motion), 155 (Plaintiffs' opposition), 157 (IHOP's reply); see also Doc. No. 150, Ex. E (noticing the Espinos's deposition). The magistrate judge denied IHOP's motion on May 10, 2011. Doc. No. 158 ("5/10/11 Order"). He found that IHOP lacked standing to seek a protective order on the Espinos's behalf. 5/10/11 Order at 2-5. Further, the magistrate judge held that even if IHOP had standing, its request would be denied. He reasoned that:

> [the 3/15/11] protective order was not meant to apply to, nor shall it be extended to, all discovery that Plaintiffs might seek to obtain from third parties. While the Court believes that Defendant should not bear the burden of searching for and producing the categories of documents covered by the protective order, or producing a 30(b)(6) witness to testify as to those matters, Plaintiffs are not precluded from seeking information directly from third parties such as the Espinos. Indeed, in its Entering Order issued on December 21, 2010, the Court suggested that Plaintiffs consider first obtaining documents from the Espinos pursuant to FRCP 45.

Id. at 5-6 (footnote omitted). Plaintiffs deposed the Espinos on May 16, 2011; however, it is unclear what documents the Espinos have thus far produced.

Plaintiffs filed the instant appeal on May 13, 2011. Doc No. 163 (the "Appeal"). The Appeal seeks to overturn the magistrate judge's March 15, 2011, finding that "the request for

8

testimony and documents regarding the granting of the Windward

Mall franchise to the successor franchisee . . . [is] overbroad

and the information sought is irrelevant."  The Appeal does not

challenge the magistrate judge's April 29, 2011, denial of

Plaintiffs' motion for reconsideration.  Defendants filed an

opposition to the Appeal on June 7, 2011.  Doc. No. 176 ("Opp'n

to Appeal").[3/]

## STANDARD OF REVIEW

Pursuant to Local Rule 74.1, any party may appeal from

a magistrate judge's order determining a non-dispositive pretrial

matter or, if a reconsideration order has issued, the magistrate

judge's reconsideration order on such a matter.  The district

judge shall consider the appeal and shall set aside any portion

of the magistrate judge's order found to be clearly erroneous or

contrary to law.  See LR 74.1; see also 28 U.S.C. § 626(b)(1)(A);

---

[3/] The Court notes that because Plaintiffs have not appealed
the magistrate judge's April 29, 2011, denial of reconsideration,
it would arguably be an end-run around that denial for the Court
to consider evidence that Plaintiffs offered for the first time
in support of their motion for reconsideration.  After all,
Plaintiffs have not contested the magistrate judge's April 29
finding that "[m]ost, if not all, of the evidence attached to the
[motion for reconsideration] should have and could have been
presented in connection with the motion for protective order."
Doc. No. 146 at 18.  Nonetheless, the magistrate judge also found
that even if he had considered Plaintiffs' purportedly "new
evidence" at the time he had issued the protective order, he
would have reached the same conclusions.  Id.  Likewise, the
Court's conclusions in this Order are the same regardless of
whether the Court considers the evidence before the magistrate
judge on March 15, 2011, or on April 29, 2011.

Fed. R. Civ. P. 72(a). The district judge may also reconsider sua sponte any matter determined by a magistrate judge. See LR 74.1.

"The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 446 (C.D. Cal. 2007). "[A] magistrate judge's ruling on discovery issues, including relevancy, is clearly erroneous only when the district court is left with a 'definite and firm conviction that a mistake has been committed.'" JJCO, Inc. v. Isuzu Motors America, Inc., Civ. No. 08-00419 SOM/LEK, 2009 WL 3569600, at *2 (D. Haw. Oct. 30, 2009). The district judge may not simply substitute his or her judgment for that of the magistrate judge. See Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991). "'A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.'" Na Pali Haweo Cmty. Ass'n v. Grande, 252 F.R.D. 672, 674 (D. Haw. 2008) (citation omitted).

## DISCUSSION

Plaintiffs appeal the magistrate judge's issuance of a protective order as to "testimony and documents concerning the grant of the Windward Mall IHOP to its successors including the

10

circumstances of the grant, extensions granted and permitting issues relating thereto." Appeal at 4, 13-14; see 3/15/11 Order at 11-13, 15. According to Plaintiffs, IHOP "failed to sustain its burden that Plaintiffs' requested discovery was irrelevant or overbroad and that good cause existed for the issuance of the protective order." Appeal at 14. Plaintiffs argue that considering the "allegations in their complaint of discrimination in violation of [Hawaii's Franchise Investment Law,] and applying the liberal standards of discovery, it is clear that discovery should be allowed because it has a bearing on Plaintiffs' discrimination claim and [their] claim that IHOP's conduct in terminating Plaintiffs['] [franchise agreement] was arbitrary in violation of HRS 482E-6(1) and (2)(C), (G) and (H)." Id.

Although IHOP opposes the Appeal with strong arguments regarding the underlying merits of Plaintiffs' claims, the Court nonetheless has a "definite and firm conviction" that the magistrate judge committed a mistake in not permitting Plaintiffs to pursue any of the requested discovery from IHOP regarding its granting of the Windward Mall IHOP franchise to the Espinos. Accordingly, the Court reverses the 3/15/11 Order with respect to a number of the discovery requests now at issue on appeal.[4/] The Court affirms the 3/15/11 Order, however, with respect to several

_____

[4/] Specifically, the Court reverses with respect to paragraphs 4(a), 4(b), 4(c), 4(e), 12, and 13 of Exhibit A and paragraph 4 of Exhibit B to Plaintiffs' Deposition Notice.

other categories of discovery requests which the magistrate judge did not clearly err in finding overbroad or irrelevant.[5/]

I.      **Legal Framework**

        Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The scope of discovery permissible under Rule 26 should be liberally construed; the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." Phoenix Solutions Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 575 (N.D. Cal. 2008). "Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues." Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D. Cal. 1992) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of any party."

_____

[5/] The Court affirms with respect to paragraphs 4(d), 10, 11, and 14 of Exhibit A to Plaintiffs' Deposition Notice.

12

<u>Houdini, Inc. v. Gabriel</u>, No. CV 04-09574-GHK (SSx), 2005 WL
6070171, at *2 (C.D. Cal. Oct. 21, 2005) (citation omitted).

In turn, Rule 26(c) provides that a court "may, for
good cause, issue an order to protect a party or person from
annoyance, embarrassment, oppression, or undue burden or
expense." Fed. R. Civ. P. 26(c)(1). To establish "good cause,"
a party seeking a protective order for discovery materials must
"present a factual showing of a particular and specific need for
the protective order." <u>Welsh v. City and County of San
Francisco</u>, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995); <u>see also
Gen. Dynamics Corp. v. Selb Mfg. Co.</u>, 481 F.2d 1204, 1212 (8th
Cir. 1973). In determining whether to issue a protective order,
courts must consider "the relative hardship to the non-moving
party should the protective order be granted." <u>Gen. Dynamics</u>,
481 F.2d at 1212. "Under the liberal discovery principles of the
Federal Rules," a party seeking a protective order "carr[ies] a
heavy burden of showing why discovery [should be] denied." <u>See
Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975).

Finally, as one district court recently stated:

> The party resisting discovery has the burden of
> establishing lack of relevance or undue burden. The
> resisting party must demonstrate that the documents are
> not relevant under the broad scope of relevance
> provided by Rule 26(b)(1) of the Federal Rules of Civil
> Procedure, or that the documents are "of such marginal
> relevance that the potential harm occasioned by
> discovery would outweigh the ordinary presumption in
> favor of broad disclosure." A recitation that the
> discovery request is "overly broad, burdensome,

13

oppressive and irrelevant" is not adequate to voice a
successful objection. The party resisting discovery
must instead "show specifically how each interrogatory
or request for production is not relevant or how each
question is overly broad, burdensome or oppressive."

Fosselman v. Caropreso, No. C 09-0055 PJH (PR), 2011 WL 999549,

at *4 (N.D. Cal. Mar. 18, 2011) (internal citations, ellipses,

and alterations omitted).

## II.      Analysis

Plaintiffs appeal the grant of a protective order as to

their request that IHOP's Rule 30(b)(6) deponent be examined upon

the following categories:

4. The circumstances regarding the granting of a
franchise for the Windward Mall IHOP after Rennie
West's and/or JRW's franchise for that location was
terminated including:

(a)  The basis for granting the franchise;

(b)  The terms and conditions of the granting of the
franchise including the date(s) provided for the
opening of the franchise, any extension granted
therefore, and the circumstances of the granting or
denial of any request for an extension;

(c)  Any and all delays experienced by the successor
franchisee in obtaining a construction permit for the
Windward Mall IHOP and any and all extensions granted
to the franchisee to open the Windward Mall IHOP due to
the inability to obtain the permit;

(d)  The policy, practice, custom and/or procedure
engaged in by IHOP in determining whether to grant
extensions for the opening of an IHOP franchise,
including the circumstance where a construction permit
cannot be obtained in a timely fashion from a
governmental agency; and

(e)  The identity of any and all communications and
documents that relate to the decision to grant the

14

franchise to Plaintiffs' successors, as well as any documents that refer or relate to the subject matter of this category of inquiry and its subparts.

. . . .

10.  All dealings and agreements between IHOP and Union Mak Corporation and any of [its] employees, officers and/or agents relating to any IHOP franchise including the Windward Mall Franchise.

11.  All dealings and agreements between IHOP and VSE Kaneohe, Inc. and any of [its] employees, officers and/or agents relating to any IHOP franchise including the Windward Mall Franchise.

12.  Communications between you and Union Mak Corporation and/or VSE Kaneohe, Inc. regarding a construction permit for the Windward Mall IHOP.

13.  Communications between you and Union Mak Corporation and/or VSE Kaneohe, Inc. regarding any extensions granted either [sic] to open the Windward Mall IHOP.

14.  Communications between you and Union Mak Corporation and/or VSE Kaneohe, Inc. regarding Rennie West, James West and/or JRW.

Deposition Notice, Ex. A at 3, 5; <u>see</u> Appeal at 4, 13-17; Opp'n

to Appeal at 17-18; 3/15/11 Order at 11-13, 15.

Plaintiffs also appeal the grant of a protective order

as to their request that IHOP produce:

4.  All documents that refer or relate to the decision to grant an IHOP franchise for the Windward Mall to Rennie West's and/or JRW's successors and any other documents that refer or relate to the subject matter of category #4 [which is quoted above], including but not limited to:

(a)  All single store or multi-store development agreements covering this franchise;

(b)  The franchise agreement covering this franchise;

15

(c) All documents referring or relating to requests for and/or the granting of extensions to open the Windward Mall IHOP;

(d) All Franchise Review Committee Minutes concerning this franchise; and

(e) All documents relating to the pursuit of a construction permit by this franchisee for the Windward Mall IHOP.

Deposition Notice, Ex. B at 1; see Appeal at 4, 13-14; Opp'n to Appeal at 18-19; 3/15/11 Order at 12-13, 15.[6/]

Plaintiffs argue that such discovery is relevant to their franchise law and unfair competition claims. Appeal at 14. In particular, they contend that the discovery could: (1) "show evidence of [IHOP's] motives and plan to terminate Plaintiffs' franchise even before the deadline for opening the store arose"; (2) "show discriminatory conduct by [IHOP]" in favor of the Espinos; (3) "prove that IHOP imposed an unreasonable and arbitrary standard of conduct upon Plaintiffs . . . by requiring Plaintiffs to do the legally impossible, to wit, build a restaurant without a permit"; and (4) "show that Plaintiffs' [franchise agreement] was terminated without good cause and prior notice." Id. at 15-17. Plaintiffs further argue that the

---

[6/] Plaintiffs make it difficult to determine the scope of the Appeal by failing to discuss any of the specific categories in their Deposition Notice and by re-characterizing the magistrate judge's holding. Compare Appeal at 13-14, with 3/15/11 Order at 15. The Court should not have to rely on IHOP's opposition in order to determine which discovery requests are now at issue on appeal.

information sought "has a tendency to show whether [IHOP] acted in good faith towards Plaintiffs" and "has a tendency to prove" Plaintiffs' unfair competition claims. Id. at 17.

Hawaii's Franchise Investment Law requires franchisors and its franchisees to "deal with each other in good faith." H.R.S. § 482E-6(1). Further, § 482E-6 makes it unlawful for a franchisor: to "[d]iscriminate between franchisees . . . in any . . . business dealing," unless certain exceptions apply;[7] to "[i]mpose on a franchisee by contract, rule, or regulation, whether written or oral, any unreasonable and arbitrary standard of conduct"; or to terminate a franchise without good cause and without providing a franchisee written notice of a breach and an opportunity to cure the breach.[8]  Id. § 482E-6(2)(C), (G), (H);

_____

[7] Specifically, "any classification of or discrimination between franchisees" is not unlawful if it is: (i) "[b]ased on franchises granted at materially different times, and such discrimination is reasonably related to such differences in time"; (ii) "related to one or more programs for making franchises available to persons with insufficient capital, training, business experience, education or lacking other qualifications"; (iii) "related to local or regional experimentation with or variations in product or service lines or business formats or designs"; (iv) "related to efforts by one or more franchisees to cure deficiencies in the operation of franchise businesses or defaults in franchise agreements"; or (v) "based on other reasonable distinctions considering the purposes of this chapter and is not arbitrary." H.R.S. § 482E-6(C)(i)-(v).

[8] In full, H.R.S. § 482E-6(2)(H) makes it unlawful for a franchisor to:

Terminate or refuse to renew a franchise except for good
(continued...)

see also <u>Lui Ciro, Inc. v. Ciro, Inc.</u>, 895 F. Supp. 1365, 1388-89 (D. Haw. 1995) (holding that an allegation that a defendant violated § 482E-6(2)(C) "stated a claim for liability under H.R.S. § 482E-9"). A violation of § 482E-6 also supports an unfair competition claim under H.R.S. §§ 480-2 and 480-13. <u>See</u> <u>Lui Ciro</u>, 895 F. Supp. at 1388.

## A. Paragraphs 4(d), 10, 11, and 14 of Exhibit A to Plaintiffs' Deposition Notice

The Court finds that the magistrate judge did not clearly err in finding overbroad the requests in paragraphs 4(d), 10, 11, and 14 of Exhibit A to Plaintiffs' Deposition Notice.

First, paragraph 4(d) of Exhibit A is plainly overbroad and unduly burdensome because it relates to IHOP's policies,

---

[8]/(...continued)
cause, or in accordance with the current terms and standards established by the franchisor then equally applicable to all franchisees, unless and to the extent that the franchisor satisfies the burden of proving that any classification of or discrimination between franchisees is reasonable, is based on proper and justifiable distinctions considering the purposes of this chapter, and is not arbitrary. For purposes of this paragraph, good cause in a termination case shall include, but not be limited to, the failure of the franchisee to comply with any lawful, material provision of the franchise agreement after having been given written notice thereof and an opportunity to cure the failure within a reasonable period of time.

Section 482E-6(4), which Plaintiffs also cite, provides that "[t]he provisions of this chapter shall apply to all written or oral arrangements with the franchisee . . . and all other such arrangements in which the franchisor or subfranchisor has any direct or indirect interest."

practices, customs and/or procedures in determining whether to grant extensions for the opening of IHOP franchises <u>anywhere</u>. Although the legislative history of Hawaii's Franchise Investment Law sheds little light on the issue, and there are few cases even considering this statute, there is a strong argument that discrimination claims under H.R.S. § 482E-6 need to be based on discrimination between franchises <u>within Hawai'i</u>. <u>See</u> Robert W. Emerson, <u>Franchise Selection and Retention: Discrimination Claims and Affirmative Action Programs</u>, 40 Ariz. L. Rev. 511, 524 & n.52 (1998) ("[S]tate [franchise] statutes are probably limited to prohibiting discrimination only between franchises within the same state."). And even assuming § 482E-6 discrimination claims may be based on the allegedly preferential treatment of franchises outside of Hawai'i, paragraph 4(d) is plainly overbroad and unduly burdensome. It would likely require IHOP to testify about - and, pursuant to paragraph 4 of Exhibit B, produce documents referring or relating to - the practices and customs regarding opening extensions for hundreds of IHOP franchises in locations with business climates (and other relevant bases of comparison) nothing like Hawaii's. <u>See</u> H.R.S. § 482E-6(C)(i)-(v); <u>supra</u> note 6.[9]

_____

[9] According to its website, "[a]s of March 31, 2011, there were 1,513 IHOP restaurants located in 50 states and the District of Columbia, Canada, Guatemala, Mexico, Puerto Rico and the U.S. Virgin Islands." IHOP, Company Overview, http://www.ihop.com/
(continued...)

Second, paragraphs 10 and 11 of Exhibit A to
Plaintiffs' Deposition Notice are overbroad and unduly burdensome
not only because they relate to any IHOP franchise, and not just
the Windward Mall IHOP, but also because they are not adequately
limited with regard to time and subject matter.[10/]  Plaintiffs'
request for testimony concerning "[a]ll dealings and agreements
between IHOP and Union Mak Corporation and any of [its]
employees, officers and/or agents" and between "IHOP and VSE
Kaneohe, [LLC] and any of [its] employees, officers and/or
agents" relating to the Windward Mall IHOP would require IHOP to
testify about an enormous range of matters relating to this
franchise, which has been in operation for more than four years.

Much of the information sought by paragraphs 10 and 11
would have no bearing on Plaintiffs' claims that IHOP improperly
terminated Plaintiffs' franchise agreement, discriminated against
Plaintiffs in favor of the Espinos and their corporate entities,
imposed an unreasonable and arbitrary standard of conduct upon
Plaintiffs, and/or failed to deal with Plaintiffs in good faith.

---

[9/](...continued)
(last visited June 30, 2011).

[10/] Plaintiffs' Appeal implicitly asks the Court to approve
modified versions of paragraphs 10 and 11 of Exhibit A to
Plaintiffs' Deposition Notice such that these paragraphs would
relate to the Windward Mall IHOP only, and not "to any IHOP
franchise".  Because paragraphs 10 and 11 are overbroad even with
these modifications, the Court need not address IHOP's argument
that Plaintiffs' "'new' discovery requests are not appropriate
(or ripe) for the appeal process."  Opp'n to Appeal at 28-29.

These claims are based on IHOP's conduct in terminating
Plaintiffs' franchise agreement and granting a franchise
agreement to VSE Kaneohe for the Windward Mall IHOP, and also
IHOP's treatment of the Espinos and their corporate entities –
and to some extent, its treatment of Plaintiffs – through the
Windward Mall IHOP's opening in April 2007.

Third, paragraph 14 of Exhibit A to Plaintiffs'
Deposition Notice is overbroad and unduly burdensome for the same
reasons paragraphs 10 and 11 are overbroad.  Plaintiffs' request
that IHOP testify about communications between IHOP and Union Mak
and/or VSE Kaneohe regarding West, James West (West's former
husband, with whom West sought to open the Windward Mall IHOP),
and/or JRW is not adequately limited with regard to subject
matter.

In short, regardless of whether some portions of the
information sought by paragraphs 4(d), 10, 11, and 14 are
relevant, the magistrate judge correctly found that these
discovery requests are overbroad and unduly burdensome.

**B.**    **Paragraphs 4(a), 4(b), 4(c), 4(e), 12, and 13 of Exhibit A
       and Paragraph 4 of Exhibit B to Plaintiffs' Deposition
       Notice**

On the other hand, the Court finds that the magistrate
judge clearly erred in finding: (1) that paragraphs 4(a), 4(b),
4(c), 4(e), 12, and 13 of Exhibit A and paragraph 4 of Exhibit B
to Plaintiffs' Deposition Notice are overbroad, and (2) that the

information sought by these requests is irrelevant.[11/]  Unlike the
discovery requests discussed in the previous section, these other
categories are specifically limited with regard to time and
subject matter.  They seek information regarding the opening of
the Windward Mall IHOP, including extension decisions and
permitting issues related thereto, and a narrow range of other
documents concerning this franchise.

In particular, these discovery requests seek to
determine, among other things, whether evidence supports
Plaintiffs' arguments that the Espinos were given more leeway
than Plaintiffs in opening the Windward Mall IHOP (e.g., by being
given more time to open the franchise and being allowed to begin
construction without a permit).  In turn, such evidence might
Plaintiffs' claims that IHOP violated Ch. 482E-6 and § 480-13 by
discriminating between Plaintiffs and the Espinos (and their
corporate entities).  Such evidence might support Plaintiffs'
arguments that IHOP failed to deal with Plaintiffs in good faith
and imposed an unreasonable and arbitrary standard of conduct on
Plaintiffs.  Accordingly, the information sought by these

---

[11/] Among other things, paragraph 4 of Exhibit B to
Plaintiffs' Deposition Notice requests the production of any
"documents that refer or relate to the subject matter of category
#4 and its subparts in Exhibit 'A' attached hereto."  Consistent
with this Order, that statement is now limited to any "documents
that refer or relate to the subject matter of paragraphs 4(a),
4(b), 4(c), and 4(e) of Exhibit A to Plaintiffs' Deposition
Notice."

categories is relevant.  Also, these categories are narrowly
circumscribed, and neither overbroad nor unduly burdensome on
IHOP.

Moreover, with respect to paragraphs 4(a), 4(b), 4(c),
4(e), 12, and 13 of Exhibit A and paragraph 4 of Exhibit B to
Plaintiffs' Deposition Notice, the Court agrees with Plaintiffs,
at least with respect to some of their requests, that the
magistrate judge's May 10, 2011, "denial of Defendant's Motion
for a Protective Order regarding Plaintiffs' request for
documents and testimony directly from the Espinos demonstrates
that the Plaintiffs have met the standard of relevance under Fed.
R. Civ. P. 26(b) for discovery and that the same is not
overbroad."  Appeal at 15.  If Plaintiffs may obtain the
discovery requested by these categories from the Espinos, who are
not a party to this lawsuit, it is unclear why the defendant in
this case "should not bear the burden" of testifying about the
matters in these categories and "searching for and producing"
documents covered by such categories.  See 5/10/11 Order at 5-6;
see also Doc. No. 150 at 6-7 (discussing the documents that
Plaintiffs requested the Espinos bring to their deposition).  And
as Plaintiffs further point out, "IHOP - unlike the Espinos - had
a legal duty to maintain such records and documents."  Appeal at
5 (citing the regulation governing record keeping under Hawaii's
Franchise Investment Law).  This suggests that the burden on IHOP

is somewhat reduced both as a general matter and relative to the Espinos.

Finally, the Court is unpersuaded by IHOP's arguments in opposition to the Appeal. See Opp'n to Appeal at 22-30. None of the cases IHOP cites for the proposition that "discovery into IHOP's relationship with other franchisees, including the Espinos, is irrelevant" addressed a franchise discrimination claim. See Original Great America Chocolate Chip Cookie Co., Inc. v. River Valley, 970 F.2d 273, 275, 279 (7th Cir. 1992) (discussing a breach of contract claim); I'mnaedaft, Ltd. v. The Intelligent Office System, LLC, No. 08-cv-01804-LTB-KLM, 2009 WL 1537975, *6 & n.1 (D. Colo. May 29, 2009) (contract-based claims); Dunkin Donuts, Inc. v. Romanias, No. Civ.A.00-1886, 2002 WL 32955492 at *1 (W.D. Pa. May 29, 2002) (breach of duty of good faith and fair dealing). And IHOP's arguments regarding its interactions with Plaintiffs vís a vís its interactions with the Espinos go to the merits of Plaintiffs' claims. The same goes for IHOP's argument that "Plaintiffs seek discovery contrary to existing evidence." These arguments, while strong, do not "diminish Plaintiffs' right to discover facts supporting [their] claim of discrimination." Appeal at 18.

In short, the Court finds that the magistrate judge's grant of a protective order as to paragraphs 4(a), 4(b), 4(c),

4(e), 12, and 13 of Exhibit A and paragraph 4 of Exhibit B to Plaintiffs' Deposition Notice is clearly erroneous.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS IN PART and REVERSES IN PART the magistrate judge's March 15, 2011, Order Granting in Part and Denying in Part Defendant's Motion for Protective Order. The Court (1) AFFIRMS the magistrate judge's grant of a protective order as to paragraphs 4(d), 10, 11, and 14 of Exhibit A to Plaintiffs' Deposition Notice; and (2) REVERSES the magistrate judge's grant of a protective order as to paragraphs 4(a), 4(b), 4(c), 4(e), 12, and 13 of Exhibit A and paragraph 4 of Exhibit B to Plaintiffs' Deposition Notice.

IT IS SO ORDERED.

Dated: Honolulu, Hawai'i, June 30, 2011.



_____
Alan C. Kay
Sr. United States District Judge


West et al. v. International House of Pancakes, LLC, Civ. No. 09-00542 ACK-BMK, Order Affirming in Part and Reversing in Part the Magistrate Judge's Order Dated March 15, 2011.